**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY MCFOLLEY,** | § | |
| Plaintiff, | § § § | |
| v. | § § | **CIVIL ACTION NO.:** |
| **ROAD-MART, INC.** | § § § § | _____ |
| Defendants. | § § | **JURY DEMAND** |

**COMPLAINT**

**I.   INTRODUCTION**

1.   Anthony McFolley, (hereinafter "Plaintiff") brings this action for declaratory judgment, injunctive relief, equitable relief and monetary relief instituted to secure the protections of and to redress the deprivation of rights secured under 42 U.S.C. §1981 and Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e et seq., the "Civil Rights Act of 1991" and the pendent state law claim.   Plaintiff alleges in violation of the law, Defendant discriminated against him based on his race.   Plaintiff is entitled to equitable relief, compensatory damages, liquidated damages, punitive damages, attorneys fees and costs.

**II.   JURISDICTION**

2.   The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §1331, 1343(a)(4), 2201-2202, 42 U.S.C. §§2000e et seq and 42 U.S.C. §1981.   This suit is authorized and instituted pursuant to 42 U.S.C. §1981 and Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §§2000e et seq., the "Civil Rights Act of 1991".   The jurisdiction of this Court is invoked to secure protection of and redress

deprivation of rights secured by 42 U.S.C. §1981 and 42 U.S.C. §§2000 et seq. providing for injunctive and other relief against discrimination in employment based on race or color.

3. Plaintiff files this §1981 race discrimination suit within two (2) years of the discriminatory treatment.

4. Plaintiff timely filed his charge of discrimination based on race or color with the Equal Employment Opportunity Commission (EEOC) within 180 days after the last discriminatory treatment. The plaintiff further filed his discrimination suit within 90 days after receipt of his right-to-sue letter issued from the EEOC.

### III.   PARTIES

5. Plaintiff, Anthony McFolley, is a citizen of the United States and a resident of the State of Alabama.

6. Defendant Road-Mart, Inc. is a domestic corporation with its operations currently or formerly located in Dothan, Alabama.

### IV.   STATEMENT OF FACTS

7. Plaintiff was employed by Defendant as a Tire Technician from 2014 until approximately August 14, 2019.

8. White Caucasian employees received benefits upon their hiring, while Plaintiff was forced to wait for four years before being offered the same.

9. White Caucasian Tire Technicians, including those Plaintiff trained, were hired at higher pay rates than Plaintiff, and were being paid commissions for work Plaintiff was performing.

10. White Caucasian Tire Technicians always earned commissions for work they performed, but Plaintiff was not given this benefit.

11. Per the Defendant's policy, Plaintiff was the only Tire Technician who should have received commission because he the Tire Technician test unlike all others.

12. Plaintiff spoke to Bill Bowden, ("Bowden"), his District Manager, about the racial disparity in commission practices on numerous occasions, but Bowden refused to help.

13. Plaintiff's managers favored white Caucasian Tire Technicians, assigning them work guaranteeing higher rates of commission.

14. Additionally, Defendant forced Plaintiff to perform "roll calls" were Plaintiff was due additional compensation, but white Caucasian employees received these monies instead.

15. Defendant tasked Plaintiff with less favorable job assignments throughout his employment. White Caucasians were allowed to forego the work Plaintiff was forced to do.

16. On one occasion, Defendant instructed Plaintiff to move three to four-hundred tires from one spot to another.

17. The next day, Plaintiff was told to move the same tires to a different location for no cognizable reason. Such tasks were assigned to Plaintiff in attempt to humiliate him, and they did.

18. In another example, Defendant told repair a tractor at a peanut mill.

19. The tractor was located in an area subjected to large amounts of waste being ejected from the mill and towards the tractor. The tractor was capable of being moved, but Plaintiff's manager refused to do so.

20. A white Caucasian employee videotaped Plaintiff performing this task while commenting that Plaintiff was becoming white because of the dust, i.e., Plaintiff was becoming Caucasian.

21. Plaintiff never realized the commissions he was due from this off-site work. It was

given to white Caucasian employees instead.

22. Josh Meredith, ("Meredith"), a white Caucasian Tire Technician, told Plaintiff he had "never worked with a black guy."

23. On or around October of 2016, Meredith told Plaintiff he was going to "shoot [Plaintiff's] nigger ass."

24. Meredith began bringing a pistol to work every day to intimidate Plaintiff.

25. Plaintiff complained to Bowden about Meredith's threats and comments.

26. Subsequently, Meredith and a white Caucasian Tire Technician known as "Boston" used the word "nigger" in reference to Plaintiff on a daily basis.

27. On Martin Luther King Jr., Day, Meredith gave Plaintiff a watermelon flavored candy and told Plaintiff he was surprised Plaintiff was working on this holiday.

28. Meredith then told Plaintiff that his father told said, "black people only eat chicken and watermelon on Martin Luther King Jr., Day," and while he could not produce a real watermelon, he found the watermelon flavored candy for Plaintiff.

29. Plaintiff told Bowden he was still being subjected to racial harassment, but Bowden only laughed and asked, "Well, what do you people eat on Martin Luther King Day?"

30. On or around November of 2018, "Boston" approached Plaintiff and stated "I like it here in the southeast. They hired me to work smarter, and you to work harder. You're the mule, right?".

31. Plaintiff immediately reported this to Bowden, who only said, "I guess you need to work a little harder, then."

32. Meredith, Boston, and other white Caucasian employees then began to refer to Plaintiff as "the mule" on a daily basis.

33. Plaintiff reported this to Bowden, but Bowden again refused to help.

34. Because of Bowden's inaction, Plaintiff complained to Eddie Harwick, the owner of Defendant's facility, about the racially discriminatory behavior he was constantly subjected to.

35. Eddie Harwick transferred Boston to another store but did not take any other action to remedy the persistent issues.

36. In or around July of 2019, Josh Sellers ("Sellers"), a white Tire Technician, approached Plaintiff and told Plaintiff he would never be as good as him and spit chewing tobacco at Plaintiff's feet.

37. Other white employees, including but not limited to Sellers and Boston would spit chewing tobacco at Plaintiff and areas where he would have worked from the floor.

38. Plaintiff again told Bowden he was being targeted because of his race, but Bowden offered no help to Plaintiff.

39. On or around August 14, 2019, Sellers was angry because Plaintiff serviced a work truck he wanted to work on.

40. Sellers felt the truck should have been preserved for him because he is a white Caucasian, and the truck would bring him additional compensation.

41. Chase (LNU), a white Caucasian supervisor told Plaintiff he was saving the truck for Sellers.

42. Such practices are against Defendant's policy.

43. Sellers then threw a cup of water in Plaintiff's face in the presence of Chase.

44. Sellers and Chase (LNU) went into the Defendant's back office once while Plaintiff entered the restroom to dry off.

45. Upon leaving the restroom, Plaintiff found Sellers waiting for him, where Sellers

again threw a cup of water in Plaintiff's face and told Plaintiff that Defendant ordered him to "pack [his] shit and go."

46. Plaintiff called Chase on or around August 15, 2019 and asked if he had a commission check for him. Chase told Plaintiff the money was taken.

47. Chase, Bowden, and other members of Defendant's management were complicit in Plaintiff's harassment and continued to withhold his commissions.

48. During Plaintiff's time with Defendant, there were a total of four African Americans. Plaintiff was the last remaining African American prior to his departure, and the others left because of the hostile work environment maintained by Defendant.

49. James Cribs, a white Caucasian employee of Defendant, told Plaintiff he was sorry for the way he and his co-workers acted toward Plaintiff, i.e., he was feeling remorseful for the racially discriminatory environment perpetuated by Defendant.

50. James Cribs then told Plaintiff he did good work, and he was unaware of any reason aside from Plaintiff's race as to why he was treated poorly.

51. When Michael Skinner, Plaintiff's initial Manager, ceased working for Defendant, he told Plaintiff that Defendant was doing everything in its power to make Plaintiff quit.

52. Another African American Tire Technician was experiencing similar issues, so he attempted to complain to Bowden.

53. Bowden refused to take the time to speak with him about the discrimination taking place, so the African American Tire Technician referenced above ceased working for Defendant.

54. On his way out, the African American Tire Technician wished Plaintiff good luck because Plaintiff was persevering when he could no longer do the same.

55. Plaintiff did not know where else to turn because all attempts at redressing racial

discrimination were impeded by those perpetuating the discriminatory acts against Plaintiff.

### A. CLAIM ONE – RACE DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT (DISPARATE TREATMENT)

56. Plaintiff brings his disparate treatment claim based on race pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. §2000e et seq., the "Civil Rights Act of 1991".

57. Plaintiff reasserts and incorporates by reference Paragraphs 2, 4-6, 8-11, 13-33, 36-37, and 39-55 as set forth above as if fully restated therein.

58. Plaintiff is a black, African American.

59. Plaintiff witnessed and endured race-based disparate treatment where similarly situated employees who are non-African American were allowed to receive benefits upon their employment, started out with higher wages, paid commissions, paid additional commissions accordingly, received favorable jobs, and paid commission for off-site jobs.

60. Plaintiff experienced disparate treatment based on his race where similarly situated employees who are non-African American were forced to endure harassment based on their race.

61. Plaintiff experienced disparate treatment based on his race where Defendant subjected similarly situated non-African American employees to favorable terms and conditions of employment in comparison to Plaintiff.

### B. CLAIM TWO-VIOLATIONS OF 42 U.S.C. §1981 (DISPARATE TREATMENT AND RETALIATION)

62. Plaintiff brings his race-based disparate treatment and retaliation claims pursuant to 42 U.S.C. §1981.

63. Plaintiff incorporates by reference Paragraphs 2-3, 5-6, and 57-58 as set forth above as if fully restated therein.

64. Plaintiff experienced disparate treatment based on his race where Defendant subjected similarly situated non-African American employees to favorable terms and conditions of employment in comparison to Plaintiff.

### C. CLAIM THREE-RACE DISCRIMINATION (HOSTILE WORK ENVIRONMENT

65. Plaintiff adopts and re-alleges Paragraphs 2-55 as if fully set forth herein.

66. Plaintiff was discriminated against and harassed because of his race. This harassment created a hostile work environment.

67. The harassment was severe and or pervasive, and it affected the terms and conditions of Plaintiff's employment.

68. Defendant failed to address the many complaints of racial harassment, causing Plaintiff severe distress.

69. Defendant failed to take prompt remedial action to stop or remedy the harassment.

70. Because of Defendant's conduct, Plaintiff suffered severe emotional distress, embarrassment, and humiliation.

71. Defendant acted with malice, and or reckless indifference toward Plaintiff.

### D. NEGLIGENT/WANTON RETENTION

72. Plaintiff adopts and re-alleges Paragraphs 7-55 above as if fully set forth herein.

73. Defendants acted with malice, and or reckless indifference towards Plaintiff.

74. By action or inaction, Defendants ratified, and or condoned unlawful race discrimination directed at Plaintiff.

75. The Defendants knew or should have known of its employees' discriminatory conduct taking place both before and during Plaintiff's employment, including but not limited to that of Sellers, Meredith, and Boston.

76. The Defendants failed to take adequate steps to remedy the situation.

77. The Defendants' failure to adequately remedy the situation caused the Plaintiff to suffer severe emotional distress, embarrassment, and humiliation.

## V. **PRAYER FOR RELIEF**

**WHEREFORE,** the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

a. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by 42 U.S.C. §1981 and Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991", 42 U.S.C. §2000e et seq.

b. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate 42 U.S.C. §1981 Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, by the "Civil Rights Act of 1991", 42 U.S.C. §2000e et seq.

c. Enter an order requiring the defendant to make the plaintiff whole by awarding him the position(s) he would have occupied in the absence of its retaliation, back-pay (plus interest), punitive and compensatory damages and/or nominal damages, and benefits.

d. Enter an order requiring the Defendant to make the Plaintiff whole by awarding him punitive damages, compensatory damages including but not limited to lost wages and benefits, and/or nominal damages, declaratory and injunctive relief, and benefits.

e. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

          Respectfully submitted,

          */s/ Eric Sheffer*
          **ERIC SHEFFER**
          **WIGGINS, CHILDS, PANTAZIS,**
          **FISHER & GOLDFARB, LLC**
          The Kress Building
          301 19th Street North
          Birmingham, Alabama 35203
          Telephone: (205) 314-0500
          Facsimile: (205) 254-1500
          E-mail:  rcamp@wigginschilds.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**

          */s/ Eric Sheffer*
          **OF COUNSEL**

Plaintiff requests this Honorable Court to serve via certified mail upon the Defendant the following: Summons, Complaint.

**Defendant's Address:**
Road-Mart, Inc.
424 Lakeview Road
Ozark, Alabama 36360

10